**THIRD DIVISION
DOYLE, P. J.,
HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**April 12, 2024**

# In the Court of Appeals of Georgia

A24A0316. FLEUREME v. CITY OF ATLANTA et al.

HODGES, Judge.

Roodson Fleureme sued the City of Atlanta (the "City") and city employee Dwayne De Jonge, alleging he was injured when De Jonge "failed to yield" and "ran over" him with a city vehicle while he was on a public sidewalk. The City moved to dismiss the complaint, asserting that Fleureme's ante litem notice was not properly served on the mayor or the chairperson of the city council as required by OCGA § 36-33-5 (f).[1] The trial court agreed and granted the City's motion to dismiss. Fleureme appeals from this order. Finding no error, we affirm.

---

[1] The motion to dismiss also argued that De Jonge could not be held personally liable because he was operating in his official capacity when the incident occurred. Fleureme agreed that De Jonge should be dismissed based on official immunity, and no issues regarding De Jonge's dismissal are before us on appeal.

A plaintiff seeking to sue a municipality for monetary damages must notify the municipality by giving notice ("ante litem notice"). See OCGA § 36-33-5 (a). "The giving of the ante litem notice in the manner and within the time required by the statute is a condition precedent to the maintenance of a suit on the claim." (Citation and punctuation omitted.) *City of Albany v. GA HY Imports*, 348 Ga. App. 885, 888 (825 SE2d 385) (2019). The crux of this appeal involves an interpretation of the ante litem service requirement delineated in OCGA § 36-33-5 (f):

> A claim submitted under this Code section shall be served upon the mayor or the chairperson of the city council or city commission, as the case may be, by delivering the claim to such official personally or by certified mail or statutory overnight delivery.

This particular subsection was added to the statute in 2014. See Ga. L. 2014, p. 125, § 1. "[T]he prior version of the statute did not specify any particular individuals or entities to be served with the plaintiff's ante litem notice. Rather, under the prior version of the statute, parties were simply directed to 'present the claim in writing to the governing authority of the municipal corporation for adjustment.'" (Punctuation omitted.) *Albany*, 348 Ga. App. at 889 (1); see OCGA § 36-33-5 (b) (2013). Accordingly, this Court held in cases decided under the prior version of the ante litem

statute that notice was sufficient if presented to any department or official of the municipal government. See, e.g., *Canberg v. City of Toccoa*, 245 Ga. App. 75, 78 (1) (535 SE2d 854) (2000). That is no longer the case.

In construing subsection (f) of the amended statute, this Court has concluded:

> By electing to add a separate subsection that expressly and specifically directed that claims under OCGA § 36-33-5 "shall be served upon the mayor or the chairperson of the city council or city commission, as the case may be," we conclude that the General Assembly intended to reduce uncertainty by limiting the pool of individuals or entities upon which ante litem notice could be served for purposes of satisfying the notice requirements of the statute.

(Citation and emphasis omitted.) *Albany*, 348 Ga. App. at 890 (1). Specifically, we noted that the statute's "use of the directive 'shall' . . . is a mandatory command" requiring that the mayor or the chairperson of the city council or city commission must be served with the notice, and a claimant must strictly comply with this service requirement. Id. at 888, 891 (1). In addition, we reiterated that governing officials cannot waive statutory ante litem notice requirements, either expressly or by conduct, and therefore, even if a city official conducts an investigation into the claim, that action does not waive the lack of proper notice. Id. at 888-889.

3

With these guiding principles in mind, we turn to the relevant facts in this case, conscious that: (i) "[o]ur review of a trial court's grant of a motion to dismiss is de novo, and we construe the allegations of the complaint in the light most favorable to the plaintiffs[,]" *Wallace v. City of Atlanta*, 368 Ga. App. 260, 261 (889 SE2d 438) (2023); and (ii) "[t]he interpretation of a statute is a question of law, which we review de novo[,]" *Ussery v. Goodrich Restoration*, 341 Ga. App. 390, 391 (1) (800 SE2d 606) (2017). So viewed, Fleureme's complaint indicates that "[s]ervice may be perfected upon Defendant City of Atlanta, Georgia by service upon the honorable Mayor Andre Dickens, City of Atlanta, Executive Offices, 55 Trinity Avenue, Atlanta, Fulton County, Georgia 30303." The complaint further alleges that prior to filing his lawsuit, Fleureme served notices of claim to: "Defendant City of Atlanta, Georgia via Federal Express Priority Overnight delivery by letter addressed to . . . City of Atlanta Mayor or President of Atlanta City Council, and City of Atlanta Office of the Mayor[.]"[2]

---

[2] Fleureme served two additional notices of claim to City of Atlanta Office of Fleet Services and City of Atlanta Police Department Chief Erika Shields, but he does not assert that these two notices were proper ante litem notices, and, indeed, they were not. See OCGA § 36-33-5 (f); *Albany*, 348 Ga. App. at 885, 889-891 (1) (reversing trial court's denial of motion for judgment on the pleadings and holding that service of an ante litem notice on the city risk manager, the city attorney, and the city's director of engineering did not comply with the statutory service mandate).

Exhibit "A" attached to the complaint[3] shows a Federal Express overnight mailing label addressed to:

> Atlanta City Hall
> Atlanta City Council

with an inside letter including a salutation "To Whom it May Concern" and a header noting: "Atlanta City Hall[,] Mayor or President of Atlanta City Council." The exhibit contains another Federal Express overnight mailing label addressed to:

> City of Atlanta Office of the Mayor
> City of Atlanta

with an inside letter including a salutation "To Whom it May Concern" and a header noting: "City of Atlanta[,] Office of the Mayor."

The City filed a motion to dismiss Fleureme's complaint, asserting that the City was not properly served with ante litem notice. The trial court granted the City's motion to dismiss, specifically finding: (i) "Mailing a notice to 'Atlanta City Council' and listing 'Mayor or President of Atlanta City Council' only on the notice itself rather than the outside of the envelope does not follow the plain language requirement

---

[3] "The exhibits attached to the complaint, including the ante litem notice in the present matter, are part of the complaint and should be considered by a court ruling on a motion to dismiss." *Hall v. City of Blakely*, 361 Ga. App. 135, 136, n. 1 (863 SE2d 393) (2021).

that one of those officials be served"; and (ii) "A letter to the 'Office of the Mayor' rather than the mayor himself does not meet the requirements if that office employs multiple people." At issue on appeal is whether these mailings complied with the notice requirements mandated in OCGA § 36-33-5 (f).[4]

Fleureme argues on appeal that the trial court erred in dismissing his complaint for failure to comply with the ante litem notice provision regarding service. He specifically asserts that the City's argument over the way the envelopes containing the notices were addressed amounts to "immaterial nitpicking," and the court's statutory interpretation was flawed. Before addressing each mailing specifically, we turn to Fleureme's general arguments regarding the trial court's interpretation of the statutory requirement.

1. Fleureme asserts that the trial court's analysis "goes off the rails" because the court failed to recognize that OCGA § 36-33-5 (f) "provides a disjunctive list of alternative, acceptable service methods to serve the official – (1) personally **or** (2) by certified mail **or** (3) by statutory overnight delivery – [and instead] erroneously

---

[4] The parties do not dispute that the notices were timely or otherwise satisfied the statutory requirements for ante litem notices, and we therefore do not address other issues regarding the ante litem notices.

blended the three into one personal service requirement[.]" (Emphasis in original.) According to Fleureme, the ante litem statute does not require service on the official personally if a claimant chooses to serve the official by certified mail or statutory overnight delivery; rather, service on the official's office is sufficient if those two methods are utilized. While service on the mayor's office or the chairperson of the city council or city commission's office may, in fact, be sufficient under the statute if service is accomplished using certified mail or statutory overnight delivery, we hold that the statute requires that the notice must actually be addressed to one of these statutorily designated individuals and not merely his or her office. See *Albany*, 348 Ga. App. at 891 (1) (holding that failure to serve either the mayor or the chairperson of the city council or the city commission does not comply with the ante litem statute and is fatal to a claim).

"[T]he fundamental rules of statutory construction require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citation and punctuation omitted.) *Albany*, 348 Ga. App. at 890 (1). As discussed previously, OCGA § 36-33-5 (f) mandates – through the use of the word "shall" – that the mayor

7

or the chairperson of the city council or city commission must be served with the notice. Id. at 891 (1). The statute clarifies upon whom and how ante litem notice must be served to reduce uncertainty and ensure the proper individuals are aware of a claim. Id. at 890 (1).

> If substantial compliance with subsection (f) was all that is required (i.e., service of notice on other individuals or entities associated with the municipal corporation other than those specified in subsection (f) would be sufficient), then there was no purpose in enacting subsection (f), at least not with the use of the directive 'shall,' which is a mandatory command.

Id. at 891 (1). Indeed, the statutory language is clear and unambiguous: "A claim submitted under this Code section *shall be served upon* the mayor or the chairperson of the city council or city commission, as the case may be[.]" (Emphasis supplied.) OCGA § 36-33-5 (f). The statute then delineates how such service may be accomplished: "by delivering the claim to such official personally or by certified mail or statutory overnight delivery." Id. "[W]e presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Albany*, 348 Ga. App. at 890 (1).

The statute does not, as argued by Fleureme, permit: (i) service on the mayor or the chairperson of the city council or city commission personally; *or* (ii) service "on the office, not the person" of one of these individuals by (a) certified mail, or (b) statutory overnight delivery. Such a reading does not comport with the statutory language or our prior interpretation of this statutory subsection. The statute specifically states service must be "upon the mayor or the chairperson of the city council or city commission[.]" OCGA § 36-33-5 (f); see also *Albany*, 348 Ga. App. 890 (1) (holding that service on the city attorney or any department or official of the municipal government is no longer sufficient given the legislature's addition of subsection (f) to the statute). Had the General Assembly intended to broaden the statute to include service upon the offices of those statutorily named individuals it could have done so. It did not. The clear language of the statute requires that the designated officials receive notice of the claim via personal, certified, or statutory overnight delivery.

We reject Fleureme's assertion that OCGA § 9-11-5 (b), which discusses the rules for serving a party or his attorney, permits service of ante litem notice on the office of the official – the mayor or the chairperson of the city council or city

9

commission. "For purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent." (Citation and punctuation omitted.) *Southstar Energy Svcs. v. Ellison*, 286 Ga. 709, 712 (1) (691 SE2d 203) (2010). We find no indication that the General Assembly intended for the general service statute, OCGA § 9-11-5 (b) – which specifically states, *"[a]s used in this Code section*, the term 'delivery of a copy' means handing it to the person to be served or leaving it at the person to be served's office with a person in charge thereof . . ."– to control over the specific ante litem statute indicating who and how to serve ante litem notices. See *Baylis v. Daryani*, 294 Ga. App. 729, 730 (1) (669 SE2d 674) (2008) (finding no indication that the General Assembly intended for the general civil practice act statute to control the specific statute governing actions brought on an open account).

Fleureme further cites *Hicks v. City of Atlanta*, 154 Ga. App. 809, 810 (270 SE2d 58) (1980), to support his proposition that service on the official's office complies with the ante litem requirement: "[T]o comply with *ante litem* notice requirements, a claim 'must be addressed to and received by the municipality or one of its departments or officials[.]'" That case, however, is inapplicable, as it was

10

decided under the prior version of OCGA § 36-33-5, where "parties were simply directed to 'present the claim in writing to the governing authority of the municipal corporation for adjustment.'" (Punctuation omitted.) *Albany*, 348 Ga. App. at 889 (1); see OCGA § 36-33-5 (2013).

We likewise disagree with Fleureme's argument that the address on the outer envelope containing a notice of claim is irrelevant because "the plain text of [OCGA § 36-33-5 (f)] contains no such requirement that an envelope, unlike an ante litem notice contained within that[,] is addressed to the required official[.]" (Emphasis omitted.) As stated in *Albany*, the statute's "use of the directive 'shall' . . . is a mandatory command" requiring that the mayor or the chairperson of the city council or city commission must be served with the notice, and a claimant must strictly comply with this service requirement. 348 Ga. App. at 891 (1). Fleureme's argument is illogical as there is no way to ensure that the claim notice is properly served on the statutorily designated individual when service is accomplished using certified mail or statutory overnight delivery if the mailing label is not properly addressed to that designated individual. See generally *Bankers Mut. Cas. Co. v. Peoples Bank of Talbotton*, 127 Ga. 326, 327-328 (56 SE 429) (1907) (holding that a letter must be properly

addressed for a presumption of receipt to arise). We cannot fathom that the General Assembly did not mean for all methods of service – personal, certified mail, or statutory overnight delivery – to be addressed to the appropriate designated official. Accordingly, we hold that mailing an ante litem notice, with an appropriately addressed label, to the "mayor or the chairperson of the city council or city commission" is required to comply with OCGA § 36-33-5 (f)'s service requirement.

Fleureme also appears to argue in his appellate brief that his ante litem notices were sufficient because they were successfully delivered and received: The "ante litem notices were successfully delivered, thereby complying with the statute's purpose of providing the City with the opportunity to investigate potential claims, ascertain the evidence, and avoid unnecessary litigation." (Citation, punctuation, and emphasis omitted.) This argument fails because, as we have previously stated, a claimant must strictly comply with OCGA § 36-33-5 (f), and neither substantial notice nor actual notice relieve the claimant of his burden to comply with the statutory mandates regarding service. See *Albany*, 348 Ga. App. at 889-891 (1).

Finally, Fleureme asserts that the trial court failed to strictly construe OCGA § 36-33-5 (f) against the City and, instead, strictly construed the statute against him.

He claims that recent appellate decisions "have focused on a claimant's compliance with the contents of the ante litem notice (i.e., the statutorily required information or factual details required by OCGA § 36-33- 5 (b) & (e)), and not the precise nomenclature used to describe the city official who is to be served with the notice." (Emphasis omitted.) See *Brandenburg v. City of Vidalia*, 366 Ga. App. 51, 55-57 (1) (880 SE2d 625) (2022) (affirming summary judgment to a city after finding that ante litem notice failed to strictly or substantially comply with subsection (e) of the statute, which requires that the description of the extent of an injury must include a specific amount of monetary damages being sought from the municipality); *Hall v. City of Blakely*, 361 Ga. App. 135, 136-139 (863 SE2d 393) (2021) (affirming dismissal of a complaint after finding that ante litem notice failed to strictly or substantially comply with subsection (e) of the statute regarding a specific amount of monetary damages); *Davis v. City of Valdosta*, 357 Ga. App. 900, 901 (852 SE2d 859) (2020) (same); *Williams v. City of Atlanta*, 342 Ga. App. 470, 471-473 (803 SE2d 614) (2017) (affirming summary judgment to a city after finding that ante litem notice failed to substantially comply with subsection (b) of the statute, which requires the notice state the time, place, and extent of the injury). We find no error in this regard.

First of all, none of the cases cited by Fleureme actually addressed service of the ante litem notice or OCGA § 36-33-5 (f). Second, and more importantly, this Court has specifically addressed subdivision (f), construed the statute, and concluded that "strict compliance with OCGA § 36-33-5 (f) is required."[5] *Albany*, 348 Ga. App. at 889-891 (1); accord *City of Lafayette v. Chandler*, 354 Ga. App. 259, 261 (840 SE2d 638) (2020) ("A plaintiff must strictly comply with subsection (f)."). Indeed, construing the statute using our fundamental rules of statutory construction results in the conclusion that, contrary to Fleureme's contention, "the precise nomenclature used to describe the city official who is to be served with the notice" is extremely important, and the trial court's interpretation of OCGA § 36-33-5 (f) did not strictly construe the statute in favor of the City. Fleureme attempts to distinguish *Albany* on the basis that the claimant in that case did not serve the correct individuals. However,

---

[5] This Court declines Fleureme's invitation – extended in his reply brief – to revisit and reconcile the line of cases discussing strict construction of municipal ante litem notice statutes. While this Court fairly recently noted that it is unclear whether OCGA § 36-33-5 (e) requires strict or substantial compliance, see *City of Atlanta v. Burgos*, 361 Ga. App. 490, 493 (1), n. 5 (864 SE2d 670) (2021), we have clearly determined using statutory construction that OCGA § 36-33-5 (f) – the subsection at issue here – requires strict compliance. *Albany*, 348 Ga. App. at 890-891 (1). We leave for another day the resolution and construction of other issues in the ante litem statutes.

14

we do not read *Albany* so narrowly. *Albany*'s holding is not limited to a finding that the proper individuals were not served in that case; rather, this Court in *Albany* construed the statute and concluded that the clear and unambiguous language requires that the mayor or the chairperson of the city council or city commission "must be served with the notice." 348 Ga. App. at 891 (1).

2. With Fleureme's general arguments addressed, we turn now to the question of whether either mailing at issue strictly complied with the statutory ante litem service requirement mandated by OCGA § 36-33-5 (f).[6] We conclude that both fail.

(a) *Atlanta City Hall*. We first consider the envelope mailed to "Atlanta City Hall[,] Atlanta City Council[.]" Clearly, this mailing is not addressed to either "the mayor or the chairperson of the city council or city commission" as required by OCGA § 36-33-5 (f), and thus the mailing was not served on these individuals by either of the three methods delineated in the statute. See *Albany*, 348 Ga. App. at 891 (1) (holding that failure to serve the designated individuals in the statute is fatal to a claim). The fact that the notice inside the mailing designated an address "Atlanta City

---

[6] The statute requires – and the parties agree – that only one of the two ante litem notices at issue must have been properly served. See OCGA § 36-33-5 (f).

15

Hall[,] Mayor or President of Atlanta City Council" does not require a different result. It is clear that the mailing label did not designate the appropriate individual to be served under OCGA § 36-33-5 (f) and therefore the notice did not strictly comply with the statute.

(b) *Office of the Mayor*. We next turn to the envelope mailed to "City of Atlanta Office of the Mayor[,] City of Atlanta[.]" This mailing presents a closer call, but it still falls short of strict compliance with OCGA § 36-33-5 (f). As we concluded above, the ante litem statutory service mandate requires that designated individuals – "the mayor or the chairperson of the city council or city commission" – be served with notice of a claim. See *Albany*, 348 Ga. App. at 891 (1) (concluding that the statute's "use of the directive 'shall' . . . is a mandatory command" requiring that the mayor or the chairperson of the city council or city commission must be served with the notice, and a claimant must strictly comply with this service requirement). Accordingly, strict compliance requires that the mayor – not the mayor's office – be served with the mailing. See *Albany*, 348 Ga. App. at 891 (1). Although Fleureme's complaint correctly indicates that "[s]ervice may be perfected upon Defendant City of Atlanta, Georgia by service upon the honorable Mayor Andre Dickens, City of Atlanta,

16

Executive Offices, 55 Trinity Avenue, Atlanta, Fulton County, Georgia 30303[,]" service upon that individual was not accomplished by the ante litem mailing at issue in this case.

In short, while the "mayor or the chairperson of the city council or city commission" may be served by one of three methods under OCGA § 36-33-5 (f), the notice must be addressed to one of those designated individuals – not merely their offices – and, if using certified mail or statutory overnight delivery, the outer envelope mailing must designate the named individual being served. These conclusions do not, as argued by Fleureme, "add to, take from, or vary the meaning of unambiguous words" in the statute. They simply enforce the unambiguous legislative mandate that the "mayor or the chairperson of the city council or city commission" must be served in one of three ways. The mailings at issue in this case did not strictly comply with the statute, and the trial court therefore did not err in dismissing Fleureme's complaint against the City.

*Judgment affirmed. Doyle, P. J., and Watkins, J., concur.*